UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV09-4770 ODW (PJWx) | Date | December 16, 2009 |
|---|---|---|---|
| Title | *Owen M. Rooney v. Ramon C. Cortines, et al.* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge | |
|---|---|---|
| Raymond Neal | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):  Attorneys Present for Defendant(s):

Not Present  Not Present

**Proceedings (IN CHAMBERS):**  Order GRANTING in part Motions to Dismiss and Motion to Strike [Docs # 39, 42, and 45]

Presently before the Court is Defendants Ramon C. Cortines and Los Angeles Unified School District's Motions to Dismiss and Strike, Defendant Dugan & Associates Construction Management, Inc.'s Motion to Dismiss, and Defendant Parsons Commercial Technology Group's Motion to Dismiss. Having considered the arguments made in support of and in opposition to the instant motions, the Court deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the following reasons the Court **GRANTS** in part Defendants' Motions to Dismiss and **DENIES** Defendant's Motion to Strike as moot.

I. BACKGROUND

Plaintiff Owen M. Rooney ("Plaintiff") is a California resident with over 35 years experience in international construction cost management and project management. (First Amended Complaint "FAC" ¶¶ 15, 25.) Defendant Ramon C. Cortines ("Cortines") is the current Superintendent of the Los Angeles Unified School District ("District") and was the Deputy Superintendent when the allegedly unlawful acts occurred. (FAC ¶ 16.) Defendant Parsons Commercial Technology Group ("Parsons") is a corporation that employs Stephen T. Sharr ("Sharr") as a staff extension consultant to the District as Director of New Construction. (FAC ¶ 19.) Defendant Dugan & Associates Construction Management ("Dugan") is a corporation that employs Rick Crouser ("Crouser") as a consultant to the District in a management role as Chief Estimator, Central Region. (FAC

¶ 21.) Capstone Construction Management ("Capstone") coordinated Plaintiff's employment with District and collected Plaintiff's District timesheets for payment. (FAC ¶ 23.)

In early June 2006, the District interviewed and awarded Plaintiff a six month contract as a civil service grade level Project Estimator II set to expire on December 31, 2006. (FAC ¶¶ 22-23.) On or about June 30, 2006, Plaintiff began working for District as an estimating staff extension consultant. (FAC ¶ 23.)

Plaintiff alleges that during the course of his employment with the District, the District controlled his work assignments, work hours, and vacation time, as well as required Plaintiff attend regular District training sessions. (FAC ¶ 25.) Plaintiff was issued a District identification badge, keys to District facilities, card key access to the District's main offices, employee access to District databases, a direct District telephone number, a District email address, and was listed in the District's telephone and email employee directory. (FAC ¶ 25.) Plaintiff was required to work a 40-hour work week, and was even provided with District business cards bearing the District's logo. (FAC ¶ 25.) Plaintiff was also required to wear a District-issued fluorescent yellow reflective vest with a District logo, District-issued safety goggles, and a District-issued hard hat bearing the District logo, Plaintiff's name, and identifying Plaintiff as a District employee. (FAC ¶ 25.) Plaintiff was required to work exclusively in District-owned offices with District-provided office equipment. (FAC ¶ 25.) From June 30, 2006 to July 16, 2008, Plaintiff alleges that he worked exclusively for and derived all of his income from the District. (FAC ¶ 25.)

In October 2006, the District extended Plaintiff's contract an extra year through December 31, 2007. (FAC ¶ 26.) In December 2007, Plaintiff's contract was again extended through March 31, 2008, this time by Sharr acting as District's Director of New Construction. (FAC ¶ 32.) In February 2008, Sharr again extended Plaintiff's contract to December 31, 2008, and transferred Plaintiff to High School No. 1. (FAC ¶¶ 33, 40.)

According to Plaintiff, High School No. 1 was several years behind schedule and over budget, and due to the alleged poor record keeping of Sharr and Crouser, buried under a number of pending change orders. (FAC ¶ 34.) Plaintiff informed his supervisors that estimates performed by Crouser were not made in accordance with District policy and complained on at least four occasions about Crouser's daily use of vulgar language. (FAC ¶¶ 36-37.) Plaintiff sent at least three emails to his Senior Project Manager and his Owner's Authorized Representative expressing his concerns about the accounting practices and informing them that he was being "under-utilized." (FAC ¶¶ 46-47, 49.)

Plaintiff claims that on or about July 16, 2008, Sharr informed Plaintiff that he would be "let go" because Plaintiff's emails had "upset too many people." (FAC ¶ 54.) Additionally, that same day, Plaintiff received, through Capstone, a "Completion of Service" letter from the Deputy Director of Construction for the District, informing

Plaintiff that his last day would be July 18, 2008. (FAC ¶ 58.)

Plaintiff thereafter filed an administrative charge to the Equal Employment Opportunity Commission ("EEOC"), dated November 10, 2008. (FAC Ex. 2.) Specifically, Plaintiff alleged discrimination on the basis of a "disability and in retaliation for complaining of discrimination in violation of the Americans with Disabilities [Act] of 1990." (Id.) Accordingly, the EEOC issued Plaintiff a right to sue letter based on Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, and Title V. (Id.)

Plaintiff now asserts the following claims: (1) Title VII Discrimination against all Defendants; (2) Intentional Interference with Employment Contract against Parsons and Dugan; (3) Breach of Contract and Promissory Estoppel against the District; and (4) Hostile Work Environment and Defamation against all Defendants. Defendants move to dismiss on basis of Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Defendant District moves to strike on basis of Federal Rule of Civil Procedure 12(f).

## II.   LEGAL STANDARD

*12(b)(1) Motion to Dismiss*

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may challenge jurisdiction either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (jurisdictional attack may be facial or factual). When an attack is facial, the court confines its inquiry into the allegations in the complaint, and when factual, the court may look beyond the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Once the moving party has presented affidavits or other evidence properly before the court, the opposing party must furnish affidavits or other evidence necessary to establish subject matter jurisdiction. *Savage v. Glendale Union High School District No. 205, Maricopa County*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

## III.   DISCUSSION

   A.   *Title VII Claims*

Plaintiff seeks relief under Title VII under two different theories: (1) retaliation; and (2) hostile work environment. Plaintiff's first claim for relief under Title VII alleges that Plaintiff's reporting of alleged improper acts were protected activities under Title VII, and that said reports led to his termination. Plaintiff's second claim for relief under Title VII alleges that Crouser's vulgar remarks created a hostile work environment, and as such, Defendants Dugan and Parsons are liable under Title VII for negligently hiring and controlling Crouser and Sharr respectively. (FAC ¶ 89.)

In order to establish jurisdiction to bring a Title VII claim, a plaintiff is required to exhaust his administrative remedies by filing an administrative charge with the EEOC. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). "The scope of the written administrative charge determines the permissible scope of the subsequent civil action. Allegations in the civil complaint that fall outside the scope of the administrative charge are barred for failure to exhaust." *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) (internal citations omitted). Allegations of employment discrimination not included in the administrative charge and are not "like or reasonably related to the allegations contained in the EEOC charge" may not be considered. *B.K.B. v. Maui Police Department*, 276 F.3d 1091, 1100 (9th Cir. 2002).

Although Plaintiff did exhaust his administrative remedies with regards to his disability discrimination claim, this particular claim is not pled in the complaint currently before the court. Further, Plaintiff's claims for retaliation and hostile work environment under Title VII were not included in either his administrative charge to the EEOC nor the EEOC right to sue letter. Because Plaintiff's Title VII claims are not "like or reasonably related" to Plaintiff's disability claims contained in the EEOC charge, Plaintiff has failed to exhaust his Title VII administrative remedies . Thus, the Court **GRANTS** Defendants' Rule 12(b)(1) Motions to Dismiss Plaintiff's Title VII claims based on lack of subject-matter jurisdiction. Defendants' Rule 12(b)(6) Motions to Dismiss Plaintiff's Title VII claims are therefore **DENIED** as moot.

### B.   State Law Claims

The remaining claims for Intentional Interference with Employment Contract, Breach of Contract, and Defamation are state law claims which the Court would only have jurisdiction to determine through supplemental jurisdiction. "[U]nder 28 U.S.C. § 1367, federal courts may exercise 'supplemental' jurisdiction over state-law claims linked to a claim based on federal law." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A district court may decline to exercise supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In its determination of whether to dismiss supplemental state claims, district courts should consider factors such as judicial economy, convenience, fairness, and comity. *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992). "[I]n the usual case in which federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996), *overruled on other grounds by Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

Because it would be neither economical nor convenient for this Court to hear Plaintiff's remaining state law claims, the Court declines to exercise supplemental jurisdiction over them. Thus, Defendant's Motion to Dismiss the state law claims is **DENIED** as moot.

*C. Motion to Strike*

Because the Court dismisses all Title VII claims and declines to exercise supplemental jurisdiction over the remaining state law claims, there are no surviving claims before the Court. Thus, Defendant District's Motion to Strike Plaintiff's References to Superintendent Cortines is **DENIED** as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Title VII claims. Because the federal claims have been dismissed before trial, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, Defendants' Motion to Dismiss Plaintiff's state law claims, and Defendant District's Motion to Strike are both **DENIED** as moot.

IT IS SO ORDERED.

|    | -- | : | 00 |
|---|---|---|---|
| Initials of Preparer | | RGN | |